**Gary JEANTY, Plaintiff,**

v.

**CITY OF MIAMI, a political subdivision; Officer Carlos Antunez, in his individual and official capacity; Miami-Dade County, Florida, a political subdivision of the State of Florida; Officer Cynthia Lendore, in her individual and official capacity; and Officer Orlando Lopez, in his individual and official capacity, Defendants.**

**Case No. 10–20513–CV.**

United States District Court, S.D. Florida.

July 13, 2012.

---

Dorothy Frances Easley, Easley Appellate Practice PLLC, Johanna G. Roth, Jon Michael Herskowitz, The Herskowitz Law Firm, Miami, FL, for Plaintiff.

Julie Ofelia Bru, Christopher Allan Green, Miami City Attorney's Office, Johanna G. Roth, Jon Michael Herskowitz, The Herskowitz Law Firm, Marlon D. Moffett, Assistant County Attorney, Miami-Dade County Attorney's Office, Miami, FL, for Defendants.

*ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (D.E. 145, 148, 169) AS TO PLAINTIFF'S SECTION 1983 CLAIMS, DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AS TO PLAINTIFF'S SUPPLEMENTAL STATE-LAW CLAIMS, DISMISSING PLAINTIFF'S SUPPLEMENTAL STATE-LAW CLAIMS WITHOUT PREJUDICE, DENYING ALL OTHER PENDING MOTIONS AS MOOT, AND CLOSING CASE*

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court on Defendants' Motions for Summary Judgment (D.E. 145, 1/30/12; D.E. 148, 1/30/12; D.E. 169, 2/16/12), Plaintiffs Responses (D.E. 176, 2/27/12; D.E. 177, 2/27/12; D.E. 184, 3/1/12), and Defendants' Replies (D.E. 198, 3/22/12; D.E. 199, 3/22/12; D.E. 200, 3/26/12). Having considered the Motions, Responses, Replies, related pleadings, and the record, the Court finds as follows.

### I. Facts

The record evidence, viewed in a light most favorable to the non-moving party, reveals the following.

Plaintiff Gary Jeanty is the president and owner of the Security Enforcement Authority ("SEA"), a security services company. (Plaintiff's Statement of Facts, D.E. 178 at ¶ III.A.1.) SEA contracted to provide security services for the Villa de Campo Condominiums. (*Id.* at ¶ III.A.2.) The Villa de Campo Condominium complex is located outside Miami in Miami–Dade County. (*Id.*)

The Villa de Campo Condominium Association prohibits motorists from parking on the grass of the premises. (*Id.*) SEA security guards enforce this policy by placing

parking violation stickers on any improperly-parked vehicles. (*Id.*)

On the morning of March 10, 2008, SEA security guard George Ristic placed a violation sticker on a car parked on the grass. (*Id.* at ¶ III.B.4.) The car belonged to Defendant City of Miami Police Officer Carlos Antunez. (*Id.*) Antunez approached Ristic later that morning. (*Id.*) Antunez was in uniform and driving his City of Miami police cruiser. (*Id.*) He was visibly angry. (*Id.*) Ristic explained that it was his responsibility to place violation stickers on any cars parked on the grass. (*Id.*) Antunez threatened to arrest Ristic or any other employee he caught placing violation stickers on his car. (*Id.*) Antunez took out his citation book and said, "You want to put tickets, I can put tickets too." (*Id.*) Antunez wrote and issued to Ristic three traffic citations. (*Id.*) Ristic called Jeanty for assistance, but Antunez forced Ristic to hang up the phone. (*Id.* at ¶ III.B.5.)

Three days later, on March 13, 2008, Antunez confronted SEA security guard Oralus Agustin. (*Id.* at ¶ III.B.7.) Antunez was in uniform and driving his cruiser. (*Id.*) Antunez told Agustin that he was going to arrest anyone he caught driving an SEA truck. (*Id.*) Agustin called Jeanty for help, and Jeanty drove to the scene in his car. (*Id.* at ¶ III.B.8.)

When he arrived, Jeanty parked his car within a crosswalk and within thirty feet of a stop sign. (Defendant Antunez's Statement of Facts, D.E. 148 at ¶¶ 7, 18.) The tags on Jeanty's car were expired as of October 27, 2007. (Plaintiff's Statement of Facts, D.E. 178 at ¶ I.11.)

Jeanty exited his vehicle and proceeded toward Antunez. (Id.) Jeanty identified himself and asked Antunez what the problem was. (Plaintiff's Statement of Facts, D.E. 178 at ¶ I.8.) Antunez was yelling and threatening arrest, so Jeanty called the Miami–Dade dispatch for assistance. (Id.)

At some point Jeanty ended the phone call and walked back to his car. (Id. at ¶ I.9.)

Antunez then got into his own vehicle, pulled up behind Jeanty's, and activated his cruiser lights. (*Id.* at ¶ III.B.9) Antunez removed Jeanty from his car and placed him in a spread-eagle position on the back of the cruiser. (*Id.*) Antunez fidgeted with his handgun and ultimately ordered Jeanty to sit down. (*Id.*)

Miami–Dade County Police Officers Orlando Lopez and Cynthia Lendore arrived soon thereafter. (*Id.* at ¶ III.B.10.) According to Lopez and Lendore, Antunez was behaving unprofessionally and antagonistically. (*Id.* at ¶ III.B.11.) Antunez told them that Jeanty was being arrested for an expired tag. (*Id.* at ¶ III.B.10.) Lopez and Lendore handcuffed Jeanty and transported him to the Miami–Dade County Jail. (*Id.* at ¶ III.B.15.)

Antunez prepared an arrest affidavit listing "expired reg. for more than 6 months" as the basis of the arrest. (Arrest Affidavit, D.E. 147–4 at 1.) Miami–Dade County Police Sergeant Vince Atherley notarized the arrest affidavit. (Plaintiff's Statement of Facts, D.E. 178 at ¶ III.B.16.) Jeanty was detained for approximately twenty-eight hours. (*Id.* at ¶ III.B.17.)

The City of Miami Police Internal Affairs Division later investigated the incident. (*Id.* at ¶ III.C.22.) The Internal Affairs Division found no probable cause to support Jeanty's arrest. (*Id.*) The Division reasoned that driving with an expired registration is arrestable only if the registration has been expired for over six months and the driver has committed a previous offense. (*Id.*) Jeanty's registration was expired for only four months and eighteen days at the time of his arrest, and Antunez failed to properly verify Jeanty's registration status before arresting him. (*Id.*) The Division also found that Antunez

had improperly patrolled beyond his jurisdiction and that his actions toward Jeanty and Ristic were retaliatory in nature. (*Id.*)

Jeanty initiated this civil rights action in February 2010. Jeanty's Complaint sets forth the following allegations against Defendants:

| Count | Defendant | Basis | Allegation |
|---|---|---|---|
| 1 | City of Miami | Florida state law | False arrest |
| 2 | City of Miami | Florida state law | Negligent hiring, training, and supervision |
| 3 | City of Miami | 42 U.S.C. § 1983 / 4th and 14th Amendments | Policy, custom, and practice resulting in constitutional deprivations |
| 4 | City of Miami | 42 U.S.C. § 1983 / 4th and 14th Amendments | Failure to train, hire, monitor, supervise, and control |
| 5 | City of Miami | Florida state law | False imprisonment |
| 6 | Officer Antunez | 42 U.S.C. § 1983 / 4th and 14th Amendments | False arrest |
| 7 | Miami–Dade County | Florida state law | False arrest |
| 8 | Miami–Dade County | Florida state law | False imprisonment |
| 9 | Officer Lendore | 42 U.S.C. § 1983 / 4th and 14th Amendments | False arrest |
| 10 | Officer Lopez | 42 U.S.C. § 1983/ 4th and 14th Amendments | False arrest |

(Third Amended Complaint, D.E 118.)

## II. Motions for Summary Judgment

Defendants move for summary judgment in three separate motions. (*See* D.E. 148, 169, 145.)

Antunez argues, in relevant part, that Jeanty's Section 1983 false-arrest claims fail because the arrest was supported by probable cause. Antunez argues that although there may have been insufficient probable cause to arrest Jeanty for driving with an expired registration, probable cause did exist to arrest Jeanty for other infractions—specifically, parking within a crosswalk and parking within thirty feet of a stop sign. Accordingly, Antunez argues that no unlawful arrest or constitutional deprivation occurred in the first instance.

Lopez and Lendore argue that they are entitled to qualified immunity because their actions were reasonable in light of the "fellow officer rule." They argue that they could reasonably rely on the information conveyed by Antunez in arresting Jeanty for either driving with an expired registration or other uncharged offenses. They further argue that Florida law bars civil liability of police officers for assisting arrest. In addition, Miami–Dade County argues that it is entitled to sovereign immunity on Jeanty's false-arrest and false-imprisonment claims and that Jeanty's false-imprisonment claim is otherwise unsubstantiated.

The City of Miami argues that Jeanty fails to establish municipal liability for his Section 1983 claims pursuant to *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The City further argues that it is entitled to sovereign immunity on Jeanty's state law claims.

## III. Summary Judgment Standard

Summary judgment is appropriate only if it is shown "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Supreme Court has explained the summary judgment standard as follows:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

On a motion for summary judgment, the Court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### IV. Discussion

### a. Section 1983 False–Arrest Claims against Defendant Officers (Counts 6, 9, and 10)

■ Title 42, United States Code, Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

Section 1983 imposes civil liability on any person who, under color of state law, "subjects, or causes to be subjected" a person "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." The provision provides civil remedies for deprivations of federal rights elsewhere conferred. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994).

■ To state a claim under Section 1983, a plaintiff must allege facts showing that a person, under color of state law, deprived her of a right protected under the Constitution or laws of the United States. *See Little v. City of North Miami,* 805 F.2d 962, 965 (11th Cir.1986). A person acts under color of state law by acting with power possessed by-virtue of the defendant's employment with the state. *Edwards v. Wallace Cmty. Coll.,* 49 F.3d 1517, 1522 (11th Cir.1995).

■ Under certain circumstances, public officers are entitled to qualified immunity from damages liability under Section 1983. *Gomez v. Toledo,* 446 U.S. 635, 639, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th

Cir.2002). Determining whether a government official is entitled to qualified immunity involves an assessment of (1) Whether the facts that a plaintiff has alleged or shown establish the violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The qualified immunity defense involves a shifting burden of proof, whereby an officer must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Bates v. Harvey,* 518 F.3d 1233, 1243 (11th Cir.2008). Once the officer has made that showing, the burden then shifts to the plaintiff to establish that qualified immunity is not appropriate. *Id.*

■ However, "[o]nly if a cognizable violation is shown does the court proceed to determine whether defendant is entitled to immunity." 13D Charles Alan Wright, et al., *Federal Practice & Procedure* § 3573.3 n. 65 (3d ed.2008) (citing *Moore v. Andreno,* 505 F.3d 203, 208 n. 5 (2d Cir.2007)). "If there is no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity." *Marvin v. City of Taylor,* 509 F.3d 234, 244 (6th Cir.2007); *see also Ambrose v. Young,* 474 F.3d 1070, 1077 n. 3 (8th Cir.2007) ("[I]f no constitutional violation occurred, plaintiff's claim fails as a matter of law because plaintiff did not prove an essential element of the § 1983 claim.").

The alleged constitutional violations in this case arise under the Fourth Amendment to the United States Constitution, which provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

■ The "unreasonable searches and seizures" proscribed by the Fourth Amendment include unreasonable seizures of the person, and "[t]he quintessential 'seizure of the person' under our Fourth Amendment jurisprudence" is an arrest made by law enforcement. *California v. Hodari,* 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). An arrest occurs when "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." 3 Wayne R. LaFave, *Search & Seizure* § 5.1 (4th ed.2004) (quoting *United States v. Corral-Franco,* 848 F.2d 536, 540 (5th Cir.1988)).

■ Arrests must under all circumstances be supported by probable cause. See United *States v. Watson,* 423 U.S. 411, 417–23, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Probable cause exists where the facts and circumstances within officers' knowledge and of which they have reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). Whether probable cause exists depends upon the reasonable conclusions to be drawn from the facts known to the arresting officer at the time of the arrest. *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). In assessing the existence of probable cause, courts may consider "the collective knowledge of law officers if they maintained at least a minimal level of communication during their inves-

tigation." *United States v. Willis,* 759 F.2d 1486, 1494 (11th Cir.1985).

■ Even minor offenses, such as a misdemeanors or traffic violations, may be the bases for full custodial arrests. *Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (officers permissibly arrested and jailed motorist for fine-only offenses of failing to wear seat belt and failing to fasten children's seat belts); *see also Virginia v. Moore,* 553 U.S. 164, 166–67, 178, 128 S.Ct. 1598, 170 L.Ed.2d 559 (2008) (upholding arrest for misdemeanor driving-on-a-suspended-license). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater,* 532 U.S. at 354, 121 S.Ct. 1536.

■ The subjective intentions and motivations of individual officers play no role in the probable-cause analysis. *See Arkansas v. Sullivan,* 532 U.S. 769, 771–72, 121 S.Ct. 1876, 149 L.Ed.2d 994 (2001); *Whren v. United States,* 517 U.S. 806, 812–13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

■ Furthermore, "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cnty. Comm'rs,* 956 F.2d 1112, 1119 n. 4 (11th Cir.1992). "When an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *Lee,* 284 F.3d at 1196 (quoting *United States v. Saunders,* 476 F.2d 5, 7 (5th Cir.1973)); *see also Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ("[An arresting officer's] subjective reason for making

the arrest need not be the criminal offense as to which the known facts provide probable cause.").

■ Police do not violate the Fourth Amendment when they effectuate an arrest that is supported by probable cause yet prohibited by state law. *Moore,* 553 U.S. at 168–76, 128 S.Ct. 1598. While States are free to regulate arrests however they desire, state restrictions do not alter the Fourth Amendment's protections. *Id.* at 176, 128 S.Ct. 1598; *see also United States v. Goings,* 573 F.3d 1141, 1143 (11th Cir.2009) (upholding constitutionality of arrest made outside arresting officers' jurisdiction).

Florida law provides, in relevant part, that:

(1) Except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic control device, no person shall:

(a) Stop, stand, or park a vehicle:

     \*       \*      \*      \*      \*      \*

4. On a crosswalk.

(b) Stand or park a vehicle, whether occupied or not, except momentarily to pick up or discharge a passenger or passengers:

     \*       \*      \*      \*      \*      \*

3. Within 20 feet of a crosswalk at an intersection.

4. Within 30 feet upon the approach to any flashing signal, stop sign, or traffic control signal located at the side of a roadway.

     \*       \*      \*      \*      \*      \*

(4) A violation of this section is a noncriminal traffic infraction, punishable as a nonmoving violation as provided in chapter 318.

Fla. Stat. § 316.1945. "A law enforcement officer may arrest a person without a warrant when . . . [a] violation of chapter 316 has been committed in the presence of the officer." *Id.* § 901.15(5).

The circumstances presented in this case are extremely similar to those addressed in *Durruthy v. Pastor,* 351 F.3d 1080 (11th Cir.2003). In *Durruthy,* the plaintiff was in the middle of a street during a political protest. *Id.* at 1085. A police officer instructed him to get out of the street, and the plaintiff started backpedalling toward the sidewalk. *Id.* As the plaintiff approached the sidewalk, the defendant police officer grabbed him from behind, pulled him to the ground, and struggled to restrain him. *Id.* The plaintiff was arrested and charged with resisting, obstructing, or opposing an officer, Fla. Stat. § 843.02. *Id.* The charges were later dropped. *Id.* at 1085–86. The plaintiff subsequently filed a Section 1983 action alleging, among other things, that his arrest was baseless and unconstitutional. *Id.* at 1086. The defendant officer moved for summary judgment, arguing that she had probable cause to arrest the plaintiff. either for the offense charged or for other offenses—such as unjustifiably walking in a roadway paved for vehicular traffic, Fla. Stat. § 316.130(3). The district court denied summary judgment, *id.,* but the Eleventh Circuit Court of Appeals reversed, *id.* at 1084. The Court explained:

> After thorough review of the entire record, we are satisfied that Pastor had probable cause to arrest Durruthy for violating Fla. Stat. § 316.130. . . . Again, § 316.130 provides, in pertinent part, that "[w]here sidewalks are provided, no pedestrian shall, unless required by other circumstances, walk along and upon the portion of a roadway paved for vehicular traffic." Fla. Stat. § 316.130(3). Notably, no command or direction by the police to leave the streets is required

to establish a violation of this statute. Under Florida law, a law enforcement officer may arrest a person without a warrant if "[a] violation of chapter 316 has been committed in the presence of the officer." Fla. Stat. § 901.15(5). It is undisputed that Durruthy was walking in the middle of a street paved for vehicular traffic (the busy intersection of Flagler Street and N.W. 27th Avenue), where sidewalks were provided, and he was not required to do so by other circumstances.

*Id.* at 1089–90 (footnotes omitted). The Court concluded, "Simply put, our case law makes clear that probable cause exists whenever an officer reasonably believes that an offense is being committed. It is therefore difficult to understand the claim that no probable cause . . . existed to arrest Durruthy when the undisputed facts show him to have been in unmistakable violation of Fla. Stat. § 316.130(3)." *Id.* at 1090.

Also instructive is *Ybarra v. City of Miami,* No. 03–14660, 2005 WL 6526126 (11th Cir. Jan. 5, 2005). In *Ybarra,* the plaintiff was arrested after attempting to collect money in the middle of a street. *Id.* at *1. The plaintiff filed a Section 1983 action alleging, among other things, false arrest. *Id.* at *2. The district entered summary judgment for the defense, and the Eleventh Circuit Court of Appeals affirmed. *Id.* at *1. As in *Durruthy,* the Court concluded that probable cause existed to arrest the plaintiff for violating Fla. Stat. § 316.130(3). *Id.* at *2. The plaintiff nonetheless maintained that a violation of Fla. Stat. § 316.130 constituted only a noncriminal traffic infraction, so it could not furnish probable cause to support a full custodial arrest. *Id.* The Court of Appeals disagreed and explained as follows:

> The Court recognizes that [ ] even a minor offense, such as a misdemeanor or

a traffic violation, can be the basis for a custodial arrest. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001) (motorist's Fourth Amendment right to be free from unreasonable seizure was not violated when she was arrested, handcuffed, and detained in jail for one hour for failing to wear her seat belt and failing to fasten her children's seat belts). Moreover, Fla. Stat. § 901.15(5) provides that a law enforcement officer may arrest a person without warrant when "[a] violation of chapter 316 has been committed in the presence of the officer." *See State v. Potter*, 438 So.2d 1085, 1087 (Fla.Dist.Ct.App.1983) (police officer was acting within the authority conferred by § 901.15(5) when making a warrantless arrest for violation of Fl. Stat. § 316.089, a civil infraction involving failure to maintain a single lane). Therefore, Officer Pastor had probable cause to arrest Ybarra under § 316.130(3) because she unmistakably violated the statute and Florida law allows for an arrest to be based upon a violation of chapter 316.

*Id.* at *3.

◼ Consistent with the foregoing, the Court finds that the undisputed evidence establishes that Jeanty's arrest was supported by probable cause thus not unconstitutional. When Jeanty was seized and forcibly detained, the pertinent facts known to Antunez were that Jeanty had parked his car inside a crosswalk and within thirty feet of a stop sign. These facts were sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or was being committed. Regardless of whether probable cause existed to arrest Jeanty for the stated offense of driving with an expired registration, probable cause did exist to arrest Jeanty for parking in a crosswalk,

Fla. Stat. § 316.1945(1)(a)4, parking within twenty feet of a crosswalk at an intersection, *id.* § 316.1945(1)(b)3, or parking within thirty feet of a stop sign, *id.* § 316.1945(*l* )(b)4. Antunez's arrest, and Lopez and Lendore's subsequent assistance in the arrest, were thus permissible, and Jeanty's false-arrest claim fails as a matter of law. *See also Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) ("The existence of probable cause at the time of the arrest ... constitutes an absolute bar to a section 1983 action for false arrest.").

◼ Jeanty argues that reliance on the foregoing traffic offenses constitutes an improper, post-hoc justification of the arrest. (*See* D.E. 177 at 8.) Jeanty invokes the well-settled maxim that "hindsight may not be employed in determining whether a prior arrest or search was made upon probable cause." 2 LaFave, *supra*, § 3.2. Jeanty's argument confounds two distinct principles. Post-arrest events, or facts learned by officers subsequent to an arrest, cannot be factored retroactively into the probable cause assessment. The information to be considered in evaluating probable cause is only that "available to the officer at the time of the arrest or search[.]" *Id.* (footnotes omitted). But unannounced or uncharged offenses can indeed be used support an arrest retrospectively, as long as the facts supporting those offenses were known to the arresting officer at the time of arrest. *Durruthy*, 351 F.3d at 1089–90; *Bailey*, 956 F.2d at 1119 n. 4; *Lee*, 284 F.3d at 1196; *see also Devenpeck*, 543 U.S. at 153, 125 S.Ct. 588. Here, at the time he arrested Jeanty, Antunez was aware of all material information—namely, the location and position of Jeanty's parked car—to support an arrest under Fla. Stat. §§ 316.1945(1)(a)4, 316.1945(1)(b)3, or 316.1945(1)(b)4. No post-arrest or subsequently-learned infor-

mation was necessary to sustain probable cause for those offenses. The "hindsight" maxim is thus inapposite.

Jeanty argues that Antunez's arrest affidavit, which listed Jeanty's offense as driving with an expired registration, was made with reckless disregard for the truth, was facially defective, and now invalidates the arrest. (*See* D.E. 177 at 9.) But Officer Antunez was not acting pursuant to an affidavit and judicially-issued warrant when he arrested Jeanty. The arrest in this case was permissibly warrantless, justified by conduct committed in Officer Antunez's presence. Any defects in the later-completed arrest affidavit are therefore immaterial. *Cf. United States v. Schmidt,* 662 F.2d 498, 504 n. 8 (8th Cir.1981) ("Where probable cause for a warrantless arrest exists, the arrest is not invalidated because it was made pursuant to a warrant later found to be invalid.").

Jeanty further argues that Antunez was outside City of Miami jurisdiction and otherwise acted beyond the scope of his discretionary authority in conducting the arrest. (*See id.* at 2.) Jeanty thus claims that Antunez fails to meet his initial burden of proof for claiming qualified immunity. However, the Court does not reach the present disposition on the basis of qualified immunity. The Court finds no unlawful arrest or constitutional deprivation in the first instance. Jeanty therefore fails to sustain a prima facie case for false arrest, and the Court need not proceed to any qualified-immunity analysis.

Jeanty also cites Antunez's uncomely behavior in support of his false arrest claims. (*See id.* at 6.) Jeanty stresses that Antunez was "antagonistic" that the altercation was "just a trigger-pull away from ending deadly." (*Id.*) Jeanty argues that "Antunez's behavior violated Jeanty's Fourth Amendment protection in a way that any police officer knows it constitutes a viola-

tion [sic]." (*Id.*) If Jeanty's account of the subject incident is true, then Antunez's conduct may leave something to be desired. But the sole question before this Court is whether Jeanty's arrest was unconstitutional. Despite Antunez's temperament and questionable motivations, the conclusion remains that Jeanty's arrest was supported by probable cause. Perhaps Antunez's comportment might be relevant to an independent claim of excessive force, but Jeanty brings no such claim in this case. *See Bashir v. Rockdale Cnty.,* 445 F.3d 1323, 1332 (11th Cir.2006) ("[A]n excessive force claim presents a discrete constitutional violation relating to the manner in which an arrest was carried out, and is independent of whether law enforcement had the power to arrest.").

Jeanty finally emphasizes that the City of Miami Police Internal Affairs Division found the arrest was not supported by probable cause. (*See* D.E. 177 at 7.) However, the assessment of probable cause is a purely legal determination, *United States v. Allison,* 953 F.2d 1346, 1350 (11th Cir. 1992), and the conclusions reached by the City of Miami Internal Affairs Division do not bind this Court.

For these reasons stated, the Court finds that Jeanty's arrest was supported by probable cause, that Jeanty suffered no unconstitutional search or seizure, and that Jeanty's Section 1983 false arrest claims are thus unsustainable. On this basis the Court enters summary judgment in favor of Defendant Officers Antunez, Lopez, and Lendore on Counts 6, 9 and 10.

### b. Section 1983 *Monell* Claims against City of Miami (Counts 3 and 4)

A municipality may be subject to liability under Section 1983 when by official "policy" or "custom" it has precipitated the deprivation of constitutional rights. *Monell v. Dep't of Soc. Servs.,* 436 U.S.

658, 690–91, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

██ However, if a plaintiff suffers no constitutional injury at the hands of individual police officers, there can be no basis for municipal liability under Section 1983 and *Monell. Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); *see also Sada v. City of Altamonte Springs*, 434 Fed.Appx. 845, 851 (11th Cir.2011) ("[B]ecause Sada was not deprived of any constitutional or statutory rights, the City is not municipally liable for claims of negligence for any insufficient training under § 1983."); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir.1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

As the Court has found no showing of unlawful arrest or constitutional deprivation in the first instance, the Court finds no predicate for municipal liability on the part of the City of Miami. The Court therefore enters summary judgment in favor of the City on Counts 3 and 4.

### c. Remaining State–Law Claims (Counts 1, 2, 5, 7, and 8)

██ Title 28, United States Code, Section 1367(c)(3) provides that a district court may decline to exercise jurisdiction over supplemental claims if the court "has dismissed all claims over which it has original jurisdiction." The same holds true when the court has disposed of all such claims on summary judgment. *See Finn v. Haddock*, 459 Fed.Appx. 833, 838 (11th Cir.2012); *Dockens v. DeKalb Cnty. Sch. Sys.*, 441 Fed.Appx. 704, 709 (11th Cir. 2011); *Cooksey v. Waters*, 435 Fed.Appx. 881, 885 (11th Cir.2011); *Linares v. Armour Corr. Health Servs., Inc.*, 385 Fed. Appx. 926, 929 (11th Cir.2010); *Hicks v. Moore*, 422 F.3d 1246, 1255 n. 8 (11th Cir.2005); *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir.

2005); *Clarity Servs. Inc. v. Barney*, 698 F.Supp.2d 1309, 1317 (M.D.Fla.2010).

As the Court has entered summary judgment against Jeanty on all claims over which it has original jurisdiction, the Court in its discretion declines to exercise supplemental jurisdiction over Jeanty's remaining state-law claims. Summary judgment is therefore denied as to Counts 1, 2, 5, 7, and 8, and those counts are dismissed without prejudice. *See Finn*, 459 Fed. Appx. at 838; *Cooksey v. Waters*, 435 Fed. Appx. at 885; *Barney*, 698 F.Supp.2d at 1317.

In line with the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant Carlos Antunez's Motion for Summary Judgment (D.E. 148, 1/30/12) is **GRANTED AS TO COUNT 6;**

2. Defendants Cynthia Lendore, Orlando Lopez, and Miami–Dade County's Motion for Summary Judgment (D.E. 169, 2/16/12) is **GRANTED AS TO COUNTS 9 AND 10;**

3. Defendant City of Miami's Motion for Summary Judgment (D.E. 145, 1/30/12) is **GRANTED AS TO COUNTS 3 AND 4;**

4. Summary judgment is **DENIED** as to Counts 1, 2, 5, 7, and 8, and those counts are **DISMISSED WITHOUT PREJUDICE;**

5. All other pending motions in this cause are **DENIED AS MOOT;** and

6. This case is now **CLOSED.**